James K. CAMPBELL, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Robert S. JONES, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

July 2, 1987.

Kathleen Kallaher, Ass't Public Advocate, Dept. of Public Advocacy, Frankfort, for appellant James K. Campbell.

Thomas L. Conn, Sandra Downs-Arnold, Fayette County Legal Aid, Inc., Lexington, for appellant Robert S. Jones.

David L. Armstrong, Atty. Gen., Elizabeth A. Myerscough, Asst. Atty. Gen., Frankfort, for appellee.

WINTERSHEIMER, Justice.

These appeals are from jury verdicts which convict Campbell and Jones of third-degree burglary and theft by unlawful taking. Both received three year sentences for each offense. They were then convicted as persistent felony offenders in the first degree. Each of Campbell's sentences was enhanced to fifteen years and ordered to run consecutively for a total of thirty years. Each of Jones' sentences were enhanced to twelve years and ordered to run consecutively for a total of twenty-four years.

The issues presented by Campbell are whether the jury verdict was unanimous on one of the two methods by which third-degree burglary was alleged to have been committed; whether his convictions of theft and burglary were double jeopardy; whether he was properly sentenced to consecutive terms and whether the jury was duly sworn.

The questions presented by Jones are whether the trial court properly permitted the statements by Jones to police officers to be introduced into evidence and whether the evidence of the value of the stolen property was properly admitted.

Campbell and Jones were discovered by police at the rear of a decorating business at 4 a.m. on December 25, 1985. The scene was reported to police as a burglary in progress. Merchandise taken from the business was found behind a dumpster. After first fleeing, Campbell voluntarily surrendered to police and Jones was apprehended.

At trial, Jones did not testify, but two statements made by him were introduced into evidence through the testimony of the interrogating police officer. The officer testified that Jones was advised of his *Miranda* rights prior to the questioning and claimed to be under some type of medication and that he was feeling groggy. Jones asked if he could make a statement later. The officer replied that it was standard procedure to take a statement as soon as possible. Jones agreed to make a statement but did not sign a written waiver of his Fifth Amendment rights. A second statement was given by Jones approximately 30 minutes later, after Jones indicated to police a desire to change his first state-

ment. He was not informed of his Fifth Amendment rights before giving the second statement. Both men were found guilty and sentenced accordingly.

This Court affirms the judgments of conviction as to both Campbell and Jones.

The instruction on burglary properly advised the jury that they could find Campbell guilty as either a principal or an accomplice. Campbell and Jones were seen carrying items from the vicinity of the break-in to another location, and they were both observed hiding at one point. When the police arrived, both men fled.

## I

Campbell argues that the evidence did not justify submission to the jury of an accomplice instruction and he claims that he could be found guilty only as a principal.

■ In our view, the jury could reasonably infer from the evidence that Campbell and Jones acted in concert. Under the facts presented here, the jury could find that Campbell had committed the burglary himself or contributed in some way to the commission of the offense. He could have been found guilty both as a principal and an accomplice. Where alternate theories of instruction would support a conviction, both theories should be submitted to the jury. *Wells v. Commonwealth,* Ky. 561 S.W.2d 85 (1978).

■ The convictions of theft and burglary are not double jeopardy. Campbell argues the theft merged with the burglary and convictions of both charges constitute double jeopardy. It is undisputed that burglary and theft are separate and distinct crimes for which an accused may be prosecuted. *Phillips v. Commonwealth,* Ky. 679 S.W.2d 235 (1984) upheld a conviction for burglary and receiving stolen property because there were two distinct offenses. The rationale of *Phillips, supra,* is applicable to this situation. Campbell was not placed in double jeopardy. This Court has repeatedly held that different elements comprise the crimes of theft and burglary. *Tribbett v. Commonwealth,* Ky. 561 S.W.2d 662 (1978).

*Polk v. Commonwealth,* Ky. 679 S.W.2d 231 (1984) is of no assistance to the argument of Campbell. In *Polk, supra,* the defendants unlawfully entered the home of the victim and then armed themselves with dangerous instruments. In that case the conviction for each offense required proof of a number of separate facts not required in order to prove the other. Here, once the burglary was accomplished by the unlawful entry, the crime was complete. Campbell could have terminated his criminal conduct at that point. Instead he chose to proceed and commit an additional crime of theft. There is no element of attempted theft present in this situation. Both the burglary and the theft were completed individual actions and fit the definition of separate and distinct crimes. *Wilson v. Commonwealth,* Ky. 695 S.W.2d 854, 860 (1985).

■ Campbell was properly sentenced to consecutive terms. Both Campbell and Jones were on parole. Campbell argues that this Court should reverse its decision in *Devore v. Commonwealth,* Ky. 662 S.W.2d 829 (1984) claiming that this Court misinterpreted KRS 503.060(2). The majority of this Court properly rejected the arguments in *Devore* and again in *Jackson v. Commonwealth,* Ky. 670 S.W.2d 828 (1984). We are not persuaded to change our mind in this situation.

The contention by Campbell that the jury was not sworn to try the case is unconvincing. The order and judgment of the trial court states that the jury was duly impaneled and sworn to hear the case. There was no motion to correct or modify the record pursuant to CR 75.08, and we are not persuaded by the arguments of Campbell.

## II

Jones was not denied due process of law when the trial judge refused to suppress the two statements Jones gave to police officers in which he attempted to explain his presence at the scene of the burglary.

Jones was read his *Miranda* rights before the first statement was recorded, but he did not sign a waiver of rights form

although he acknowledged that he understood his rights. Before giving his statement, Jones told the police officer that he was feeling a little groggy from medication and asked if the statement could be taken later. The detective told him that it was more or less standard police procedure to try to take a statement as soon as possible so that the event was fresh in everyone's mind. The officer said he would prefer to take the statement if Jones wanted to give it at that time. Jones then agreed to make a tape-recorded statement.

After taking Jones' statement, the policeman attempted to question Campbell. During this time, Jones began knocking on the door and told the officer that he wanted to make another statement explaining what "actually happened." The detective then recorded a second statement but did not again give Jones his *Miranda* rights.

Jones argues that both statements should have been suppressed because they were made involuntarily. He claims that the questioning should have been stopped when he advised the policeman that he was groggy and asked if the statement could be taken later.

■ Jones was fully aware of his rights and voluntarily waived them. He had the option to give the statement or not and he chose to proceed. There is no indication or claim of any force, compulsion or coercion.

■ Although the second statement was given without repeating the *Miranda* warnings, suppression was not necessary. The second statement was taken within 30 minutes of the first and Jones had been fully advised of his rights prior to giving the first statement. The police did not initiate any questioning in order to obtain the second statement. It was Jones who approached the police requesting the opportunity to give another statement.

■ Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected. *Miranda v. United States*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). When an accused initiates a conversation with the police, nothing in the Fifth and Fourteenth Amendments prohibits the police from listening to the voluntary statement and later using it at trial. *Edwards v. Arizona*, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981).

There is no evidence that medication had an effect on the voluntariness of the statement or Jones' ability to knowingly waive his rights. The actions of Jones and his statements do not indicate a person under the influence of a substance to the point that he cannot make a knowing waiver. *Britt v. Commonwealth*, Ky. 512 S.W.2d 496 (1974). The trial judge properly allowed the two statements by Jones to police officers to be introduced into evidence.

Jones did not properly preserve the alleged error of incompetent evidence as to the value of the stolen property. *McDonald v. Commonwealth*, Ky. 554 S.W.2d 84 (1977).

The convictions of both Jones and Campbell are affirmed.

All concur except LEIBSON, J., who dissents by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

This case graphically illustrates the reason why we have a deplorable credibility gap in criminal sentencing. Campbell and Jones have committed a third rate, nonviolent Class D felony, breaking and entering to commit theft, now classified as burglary in the third degree. KRS 511.040. This offense has a range of punishment from one to five years. KRS 532.020(1)(a).

By splitting the crime into two offenses, Theft and Burglary III, then recognizing the appellants' status as persistent felony offenders which provides significantly increased sentences, and then ordering the enhanced sentences to run consecutively, the criminal justice system has managed to punish this relatively minor offense with sentences of thirty (30) years for Campbell and twenty-four (24) years for Jones. This means that fifty-four years (54) have been meted out for breaking and entering a small business establishment, closed for

the night, in order to carry off some of the merchandise.

Further, it may be that neither appellant is eligible for parole until having served a minimum term of incarceration of not less than twenty (20) years. Campbell and Jones enjoy PFO I status, and their separately enhanced sentences for theft and burglary have been ordered served consecutively. KRS 532.080(7) requires "a minimum ... of not less than ten (10) years" before parole eligibility upon conviction of an offense as a PFO I. In contrast with Campbell and Jones, there are serious offenders who have committed terrible crimes and been sentenced to life who are eligible for parole under present Parole Board regulations, and often back on the street, after eight years. Indeed, the Parole Board may release such a person even sooner under an early release program.

The time is long past for the General Assembly to take a new look at our statutory sentencing and parole procedures, and effect needed reforms. The criminal sentencing process needs to be changed to provide realistic maximum sentences initially, let the punishment fit the crime, and end the game of parole. A criminal who has been found guilty and sentenced, and who does not deserve to be judicially probated, should serve the time (less, of course, a modicum of time off for good behavior as an inducement not to attack the prison officials).

In the meantime, while awaiting legislative reform, we should put an end to our judicial contribution to the present unreasonable and irresponsible sentencing procedures. The rules of the game, now honored only in the breach, require the prosecutor to carve out and convict for only the most serious offense represented by "the same criminal episode." American Law Institute, *Model Penal Code*, Multiple Offenses, § 1.07:

"'Arising out of the same criminal episode' is meant to include offenses that occur on substantially the same occasion or are motivated by a common purpose or plan and are necessary or incidental to the accomplishment of that purpose or plan." *Id.* at 118–19.

KRS 505.020 provides that a person should not be convicted of multiple offenses when a single course of conduct establishes the commission of more than one offense. Further, KRS 506.110 provides that a person could not be convicted on the basis of the same course of conduct of both the commission of a crime and a criminal attempt to commit that crime. We have virtually written these rules off the books. The majority opinion opines that multiple convictions are appropriate because "different elements comprise the crimes of theft and burglary." This rationale makes no sense where the evidence shows that the only motivation for the burglary was the theft that was committed on entry. The purpose of breaking in was not to commit burglary, but to commit another crime upon gaining entry; in this case theft. We permit two convictions where there is in fact only a singular criminal intent. This should be treated as double jeopardy in conflict with federal and state constitutional guarantees.

It is true that the act of burglary is complete when the criminal enters unlawfully with the intent to commit a crime. However, the act of entering is essentially just a step towards committing the crime that occasioned the entry. Where the crime which was the purpose of the burglary is clearly identified by facts and circumstances, the single criminal intent should not be punished twice. It is only where the burglar commits an additional, gratuitous offense unnecessary to the crime which was the object of the burglary that the state should punish for both offenses. *Polk v. Commonwealth*, Ky., 679 S.W.2d 231 (1984). If the burglary is to accomplish a theft, and the burglar commits an assault, the burglary and the assault should be punished, but not the burglary, theft and assault. In *Commonwealth v. Varney*, Ky., 690 S.W.2d 758 (1985), we held that, given the facts of the case, the merger principle applied and the defendant could not be convicted of both robbery and assault. Why doesn't the same principle apply here? The situation is indistinguish-

able, except that in *Varney* applying the principle operated against the interest of the accused whereas to apply the principle here would benefit the accused.

The statute setting out the crime of "criminal attempt," KRS 506.010, presents yet another facet of this complication. In the present case, using the language of the statute, the burglary was "a substantial step in a course of conduct planned to culminate in [Campbell's and Jones'] commission of the crime." Under KRS 506.-010(1)(b) such constituted a criminal attempt. KRS 506.110, multiple convictions, provides that the prosecution of an attempt to commit an offense bars prosecution for the offense. A burglary premised on an intent to steal is also an attempted theft, and conviction for both burglary and theft violates the principle in KRS 506.110.

The ongoing efforts of the judicial system to so interpret the law as to extract maximum sentences is counterproductive. Rather than creating an image that we are hard on crime, it succeeds only in presenting a picture of disproportionate sentencing. In a case such as the present one the consequences are downright embarrassing. In the future the General Assembly needs to replace the present system with a system wherein we impose appropriate sentences in the first place, and then require the person convicted to serve the time. But, in the meantime the judiciary needs to draw back from decisions construing the law in such a manner as to create disparate sentencing such as has occurred here. Campbell and Jones, two third-rate, nonviolent criminals, will be put away at public expense, possibly for the next twenty years, whereas others who have hideously offended will be released in eight, perhaps less, under Parole Board early release programs.

The next problem presented by the majority opinion is that the sentencing statutes are misconstrued and misapplied. This occurs because sentences as enhanced on the basis of PFO status are to be served consecutively, resulting in total sentences exceeding the maximum in KRS 532.-110(1)(c).

KRS 532.110(1)(c) provides that "[t]he aggregate of consecutive indeterminate terms shall not exceed in maximum length the longest extended term which would be authorized by KRS 532.080 for the highest class of crime for which any of the sentences is imposed." Under this statute (and KRS 532.080(6)(b)) the maximum term of imprisonment for each appellant, having been convicted of a Class D felony and found to be a persistent felony offender in the first degree, is twenty years. KRS 532.080(6)(b). Campbell has been sentenced to thirty years and Jones to twenty-four years.

The majority opinion cites *Devore v. Commonwealth*, Ky., 662 S.W.2d 829 (1984), as authority that individuals, such as Campbell and Jones, who commit a felony while on parole for a previous felony are excluded from the statutory maximums in KRS 532.110(1)(c) and KRS 532.080(6)(b); that therefore they may be sentenced to consecutive terms of imprisonment exceeding this sentencing cap, which would otherwise apply when convictions for separate offenses are enhanced after a PFO conviction.

*Devore* held that KRS 533.060(2) covers sentencing of paroled felons who commit subsequent felonies while on parole to the exclusion of KRS 532.110(1)(c). KRS 533.-060(2) states:

"When a person has been convicted of a felony and ... released on parole ... and is convicted or enters a plea of guilty to a felony committed while on parole ... the period of confinement for that felony shall not run concurrently with any other sentence."

My dissenting opinion in *Devore* takes the opposite view:

"[T]he provisions in KRS 533.060 are directed to the fact that sentences for new offenses shall not run concurrently with past offenses for which the defendant is on parole. A reasonable interpretation of the phrase 'with any other sentence,' (KRS 533.060(2)) is that 'any other sentence' means that unserved portion of the sentence for the felony for which

probation or parole should be revoked." *Devore,* 662 S.W.2d at 831.

KRS 533.060(2) was misapplied in *Devore.* The statute should not be construed to prohibit concurrent sentences for new felonies committed while a defendant is on parole.[1]

The majority of this Court reached its decision in *Devore* by reasoning that KRS 533.060(2) was enacted subsequently to KRS 532.110(1)(c), and that therefore KRS 533.060(2) was a "purposeful" override of the earlier statute. Now both KRS 532.110 and KRS 533.060 have been reenacted in 1986 in substantially the same language. Both statutes are equally "purposeful."

Statutory provisions should be read so as not to conflict with one another, whenever reasonably possible. *Devore* was premised on there being some conflict or an ambiguity in the statutes. Such conflict or ambiguity, if there is any, should be resolved in favor of lenity towards the accused. *Simpson v. United States,* 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978). It is a rule of longstanding that penal statutes are not to be extended by construction, but must be limited to cases clearly within the language used. *Commonwealth v. Malone,* 141 Ky. 441, 132 S.W. 1033 (1911). As stated in *Commonwealth v. Colonial Stores, Incorporated,* Ky., 350 S.W.2d 465, 467 (1961):

> "Doubts in the construction of a penal statute will be resolved in favor of lenity and against a construction that would produce extremely harsh or incongruous results or impose punishments totally disproportionate to the gravity of the offense...."

Our decision in *Devore* went off the beaten path to find a reason to disregard the sentencing cap in KRS 532.110(1)(c), and used a reason that is no longer viable since that statute was reenacted in 1986. We should now apply the sentencing cap in KRS 532.110 as written to these appellants.

---

1. Note that the majority view expressed in *Devore* also renders meaningless KRS 532.110(3), which provides:

   "When a defendant is sentenced to imprisonment for a crime committed while on parole in this state such term of imprisonment and any period of reimprisonment that the board of parole may require the defendant to serve upon the revocation of his parole shall run concurrently, unless the court orders them to run consecutively."